**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

HOMY CASA LIMITED,

                   Plaintiff,

v.

JILI CREATION TECHNOLOGY CO.,
LTD.,

                   Defendants.

Case No. 2:24-cv-00763

Judge Mark R. Hornak

**MEMORANDUM IN SUPPORT OF MOTION BY DEFENDANT
JILI CREATION TECHNOLOGY CO., LTD. TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO 12(b)(6)**

# Table of Contents

I.    Introduction ....................................................................................................................... 1

II.   Standard Under Rule 12(b)(6) ........................................................................................... 1

III.  Scope of Design Patents and Questions of Infringement ........................................................ 3

IV.   Plaintiff's Complaint ........................................................................................................... 5

V.    The Accused Product Is Plainly Dissimilar from Any of the Patented Designs Thereby
      Precluding Any Possible Determination of Infringement ....................................................... 8

      A.    Knowledge of the Prior Art Is Required for Any Assessment of Infringement ...... 8

      B.    The Accused Product and the '669 Patent Are Plainly Dissimilar ........................ 10

      C.    The Accused Product and the '703 Patent Are Plainly Dissimilar ........................ 13

      D.    The Accused Product and the '922 Patent Are Plainly Dissimilar ........................ 18

      E.    The Accused Product and the '991 Patent Are Plainly Dissimilar ........................ 20

VI.   Conclusion ......................................................................................................................... 23

# Table of Authorities

**Cases**

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ..................................................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................................1

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................1, 2

*Brown v. Piper*,
91 U.S. 37 (1875) ...........................................................................................................2

*California Pub. Employee Ret. Sys. v. The Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004) ..........................................................................................1

*Colida v. Nokia, Inc.*,
347 Fed.Appx. 568 (Fed.Cir. 2009) ...............................................................................2

*Cotapaxi Custom Design & Mfg., LLC v. Corp. Edge, Inc.*,
No. CIV A 06-5183 (JAG), 2007 WL 2908265 (D.N.J. Oct. 1, 2007),
aff'd, 284 F. App'x 809 (Fed. Cir. 2008) .......................................................................2

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ....................................................................2, 3, 4, 8, 10, 20

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015) ...................................................................3, 4, 5, 8, 14

*Fair Wind Sailing, Inc. v. Dempster*,
764 F.3d 303 (3d Cir. 2014) ..........................................................................................1

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
162 F.3d 1113 (Fed. Cir. 1998) .....................................................................................2

*In re Glavas*,
230 F.2d 447 (CCPA 1956) ...........................................................................................3

*In re Mann*,
861 F.2d 1581 (Fed. Cir. 1988) .....................................................................................3

*Lee v. Dayton–Hudson Corp.*,
838 F.2d 1186 (Fed.Cir.1988) .......................................................................................3

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
747 F.3d 1326 (Fed. Cir. 2014) .....................................................................................3

*OddzOn Prod., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ....................................................................................... 3

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
    38 F.3d 1380 (3d Cir. 1994) ............................................................................................. 2

*Pepitone v. Am. Standard, Inc.*,
    983 F.2d 1087 (Fed. Cir. 1992) ....................................................................................... 2

*Wepay Glob. Payments LLC v. PNC Bank N.A.*,
    No. 2:22-CV-00592-MJH, 2022 WL 1782504 (W.D. Pa. June 1, 2022) .............................. 3

## <u>Other Authorities</u>

35 U.S.C. § 171 ....................................................................................................................... 3

37 C.F.R. § 1.153(a) .............................................................................................................. 3

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

Fed.R.Evid. 201(b) ................................................................................................................ 1

Fed.R.Evid. 201(c) ................................................................................................................ 1

## I.    Introduction

Plaintiff's complaint advances a single claim for patent infringement against one product of Defendant.  Yet it identifies four separate design patents.  Plaintiff fails to show how the single product of Defendant could possibly infringe four different design patents.  Indeed, in view of the prior art, no reasonable consumer could possibly find that Defendant's product infringes any asserted patent.  Dismissal of Plaintiff's complaint with prejudice is appropriate.

## II.    Standard Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citations omitted). Plaintiff's factual allegations must "raise a right to relief above the speculative level" and state a "plausible claim for relief" to survive. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true any unsupported conclusions, unsupported inferences, "threadbare recitals of elements of a cause of action" or inferences drawn by plaintiff if they are unsupported by the facts of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *California Pub. Employee Ret. Sys. v. The Chubb Corp.,* 394 F.3d 126, 143 (3d Cir. 2004) (citations omitted). Nor must the court accept legal conclusions disguised as factual allegations. *Bell Atlantic,* 550 U.S. at 555 (citations omitted).

In addition to the complaint, courts may consider matters of public record, matters subject to judicial notice, [1] court orders, and exhibits attached to the complaint. *Oshiver v. Levin,*

---

[1] The Federal Circuit has held that the court may take judicial notice of published patents, even those not formally before the court, under Fed.R.Evid. 201(b) & (c). See *Pepitone v. Am. Standard, Inc.*, 983 F.2d

*Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 n. 2 (3d Cir. 1994). The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from proper factual allegations of the complaint, are the "factual allegations ... enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" *Bell Atlantic,* 550 U.S. at 555. Put another way, a complaint may be dismissed under Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

Specifically with respect to design patents, the court "can, as a matter of law, conduct its own visual inspection and declare that a product does not infringe on a design patent." *Cotapaxi Custom Design & Mfg., LLC v. Corp. Edge, Inc.*, No. CIV A 06-5183 (JAG), 2007 WL 2908265, at *5 (D.N.J. Oct. 1, 2007), aff'd, 284 F. App'x 809 (Fed. Cir. 2008) citing *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1121 (Fed. Cir. 1998), abrogated on other grounds by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). *See also Anderson v. Kimberly-Clark Corp.,* 570 F. App'x 927, 933–34 (Fed. Cir. 2014) ("The [district] court…properly concluded that 'plain differences' exist between the accused products and the patented design" and properly dismissed the claims with prejudice due to non-infringement.); *Colida v. Nokia, Inc.,* 347 Fed.Appx. 568, 570 (Fed.Cir. 2009) (affirming dismissal of design patent infringement claim under Rule 12(b)(6) as the "infringement claims were facially implausible and provided the district court with no basis on which to reasonably infer that an ordinary observer would confuse the pleaded patented designs with the accused" product). Indeed, "[w]hile infringement is a question of fact, courts may dismiss claims of design

---

1087, n. 1 (Fed. Cir. 1992). Additionally, the court may take judicial notice of things of common knowledge and used throughout the country. *Brown v. Piper*, 91 U.S. 37, 43 (1875).

infringement on a Rule 12(b)(6) motion where, as a matter of law, no reasonable factfinder could find infringement." *Wepay Glob. Payments LLC v. PNC Bank N.A.*, No. 2:22-CV-00592-MJH, 2022 WL 1782504, at *2 (W.D. Pa. June 1, 2022) citations omitted.

### III.  Scope of Design Patents and Questions of Infringement

Design patents can only claim ornamental designs, *see* 35 U.S.C. § 171, and cannot claim the structural or functional aspects of the article or device. 37 C.F.R. § 1.153(a); *Lee v. Dayton–Hudson Corp.,* 838 F.2d 1186, 1188 (Fed.Cir.1988).  Indeed, a patented ornamental design has no use other than its visual appearance. *In re Glavas,* 230 F.2d 447, 450 (CCPA 1956). Design patents are "limited to what is shown in the application drawings" and "have 'almost no scope' beyond the precise images shown in the drawings." *In re Mann,* 861 F.2d 1581, 1582 (Fed. Cir. 1988); *MRC Innovations, Inc. v. Hunter Mfg., LLP,* 747 F.3d 1326, 1333 n.1 (Fed. Cir. 2014) (quoting *In re Mann*). "Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). "[A] design patent only protects the novel, ornamental features of the patented design." *Id*. The scope of a design patent claim "must be limited to the ornamental aspects of the design, and does not extend to 'the broader general design concept.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015) (quoting *OddzOn Prod.*).

The test for infringement is the ordinary observer test in which the ordinary observer "is deemed to view the differences between the patented design and the accused product in the context of the prior art." *Egyptian Goddess*, 543 F.3d at 676.  "The ordinary observer looks to the prior art designs when assessing infringement as the prior art can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Id*. at 677.  "When the differences between the claimed and accused design are viewed in light of the

prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art." *Id*. at 678. "And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id*. Thus, with the prior art in mind, the test for infringement is "[I]n the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham Co. v. White,* 81 U.S. 511, 528 (1871) accord *Egyptian Goddess*, 543 F.3d at 670.

As an example of how the ordinary observer test is applied, this Court may review the Federal Circuit's analysis in *Ethicon*. There, the Federal Circuit examined designs for two handheld devices:



The claimed and accused designs are depicted below:

D'804 patent, Fig. 1    Covidien's accused product

*Id*. at 796 F.3d 1336The Federal Circuit held, "[w]e agree with the district court that there is no genuine dispute the claimed and accused designs of an ultrasonic surgical device are **plainly dissimilar**." *Id*. emphasis added. The Court explained:

> "On a general conceptual level, both designs include an open trigger, a small activation button, and a fluted torque knob in relatively similar positions within the underlying ultrasonic device. **Similarity at this conceptual level, however, is not sufficient to demonstrate infringement of the claimed designs**. As discussed in section II.C.2.,

> because each of these components has a functional aspect, the underlying elements must be excluded from the scope of the design claims at this general conceptual level. And when the remaining ornamental features of those components are compared, as a whole, to the corresponding ornamental features of Covidien's accused ultrasonic surgical shears, **the dissimilarities between the designs are plain**.

*Id*. emphasis added.

## IV.    Plaintiff's Complaint

Plaintiff's complaint contains no reasonable basis for any accusation of infringement.

Just as in *Ethicon*, *Anderson v. Kimberly-Clark*, *Colida*, and *Wepay Glob. Payments* no

reasonable consumer could be confused into believing that any protectable ornamental design of

any of the four patents identified in the complaint is the design of the accused product.

The first clue confirming that conclusion is the fact that Plaintiff has asserted four

different design patents against one single product of Defendant.



The four designs are obviously different.  Just superficially, it is clear that the '669 patent

has a distinct internal portion separate from the overall silhouette of the chair and that that seat

portion (that is, the portion that is sat on, as opposed to the back support) is perfectly flat.  The

backrest of the '669 is also clearly different as it has straighter sides that angle in more steeply

than the other designs and the top corner radii are tighter than in the other three designs. It is simply not possible that the '669 design would be confused with any of the other designs. Thus, it is not possible that any accused product could be confusingly similar in the eyes of an ordinary consumer to both the '669 patent and any one of the other three design patents.

As to the '703, 991, and 992 patents, the only difference among them is their legs. Each exhibits a seat shell (i.e. the combined seat portion and backrest portion) that is identical to one another.

| D920,703 | D936,991 | D936,992 |
|---|---|---|
| <br>Front | <br>Front | <br>Front |
| <br>Back | <br>Back | <br>Back |
| <br>Side | <br>Side | <br>Side |

However, the legs of the '703 patent has curved crossbars traversing the bottom of the shell that connect to the legs at sharp angles while the '992 patent has curved crossbars traversing the bottom of the shell that connect to the legs with smooth curves.



By contrast, the '991 patent has no crossbars at all. Instead, its legs form an X. This stark contrast in leg styles can be seen in Figure 6 of each of the '703, '992, and '991 patents:



Thus, while the '703 and '992 patents may appear similar when viewed from the bottom, there is no mistaking the stark difference of the '991 X shaped legs as compared to each of the '703 and '992 patents. Of course, therefore, any product that could possibly embody the design of the '703 or '992 patents could not have X shaped legs. That is, regardless of the shape of the seat shell, when the overall design is considered, the glaring difference as between the X shaped legs and the legs of the '703 or '992 patents necessarily preclude any determination that such an X shaped leg design chair is confusingly similar in the eyes of an ordinary consumer to the leg design chairs of the '703 or '992 patents.

A single accused product could not simultaneously infringe the '669 patent and any of the '703, 992, and '991 patents because the seat shell of the '669 patent is plainly dissimilar from the

seat shells of those other three patents. *See Ethicon*, 796 F.3d at 1336. So too, no single product could infringe all three of the '703, '992, and '991 patents because the legs of the '991 patent render the design of that chair plainly different from either the '703 or the '992 patent.

## V.    The Accused Product Is Plainly Dissimilar from Any of the Patented Designs Thereby Precluding Any Possible Determination of Infringement

### A.    Knowledge of the Prior Art Is Required for Any Assessment of Infringement

As noted, the test for infringement is the "ordinary observer" test. And as part of that test, "[t]he ordinary observer looks to the prior art designs when assessing infringement as the prior art can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Egyptian Goddess* at 677. Thus, an assessment of the prior art is the first step in determining whether there could possibly be infringement.

Here, the prior art includes untold numbers of chairs. The mere fact that the patents and accused products are chairs is insufficient to find infringement. The Federal Circuit's analysis in *Ethicon* made exactly that point when it confirmed that similarity at a conceptual level is not sufficient to demonstrate infringement. 796 F.3d at 1336.

More specifically, the prior art includes the famous designs of Charles and Ray Eames. The Eames were a design duo whose influence has been widely recognized, and whose designs have been recognized by the Museum of Modern Art. Among them, is the design of a molded chair. The seat shell of the chair is shown in US Patent Nos. 2,956,618 (Ex. E) and 2,812,800 (Ex. F).



It is this seat shell that was enshrined in the Museum of Modern Art, and it would become the base for numerous chair designs with differing legs:

   

**Charles Eames, Ray Eames,...**
Prototype for Side Chair
1948

**Charles Eames, Ray Eames**
Entry Panel for MoMA International...
1949

**Charles Eames, Ray Eames**
Side Chair
1950

**Charles Eames, Ray Eames**
Stacking Side Chair
1955

See Ex. G, A-54-55, Museum of Modern Art collection of Charles Eames. The designs of Charles Eames are chronicled in countless works.  One example is the 1989 work *Eames Design, The Work of the Office of Charles and Ray Eames*, excerpts of which are attached hereto as Exhibit H.  It includes a timeline showing the initial development of a molded armchair with X crossed legs from the late forties and early fifties (Ex. H, A-114-115, A-120):



Around the same time, Eames developed the molded side chair, which has the identical shape of the chair shell design of the '703, '992, and '991 patents and came in various upholsteries or plastic styles and alternate leg assemblies (Ex. H, A-116):

   

Plastic side chair with upholstered pad    Plastic side chair with "harlequin" pad    Production model of the plastic side chair    Plastic side chair with "Eiffel Tower" base

Those traditional chairs were followed by the "stacking chair" (right) that is the subject of the US Patent No. 2,956,618. Ex. E, Ex. H, A-121.  Accordingly, the works of 

Linking together a row of stacking chairs

Eames are a starting point for any assessment of the scope of the patents at issue and any consideration of whether any product could possibly infringe any one of those patents.[2]

### B.    The Accused Product and the '669 Patent Are Plainly Dissimilar

The famous Eames chair teaches the basic form of chair shell that is generally bell shaped with an S curved back (right). Ex. E.  If desired, the chair shell can easily be upholstered as explained in another Eames patent, US 2,738,835 (below). Ex. I:



Fig. 1
S Curved Back
Bell Curved Shell
40

---

[2] Eames chairs are by no means the only prior art.  However, the chairs identified herein are sufficient for establishing the closeness of the prior art and identify the "small differences between the accused design and the claimed design [that] are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676.



Turning to the design of the '669 patent, a number of features are readily apparent, and the presence of those features in the design of the '669 render the design as a whole plainly dissimilar to the design of the accused product:[3]



[3] Included herewith as Exhibit M are enlarged versions of the charts comparing the patents at issue and the accused product. The photos of the accused product are from the Complaint, Dkt. 1.



| '669 Patent | Accused Product |
|---|---|



## C.    The Accused Product and the '703 Patent Are Plainly Dissimilar

In comparing the prior art Eames design to the design of the '703 patent it is clear that

the seat shell is identical in appearance in each case.





To the extent that anything shown in the '703 patent provides any basis for determining that the overall design of the '703 patent has ornamentation that differs from the Eames chairs from the 1950s it is the legs. The simple fact that chairs have legs is far too conceptual to provide protection of the design though. *See Ethicon*, 796 F.3d at 1336. It is only the particular look of '703 patent's legs that could provide any basis for protection.  Even then, the '703 patent is merely a knockoff of one of the Eames' designs.  The prior art discloses chair legs that exhibit substantially the same curving back crossbar and rounded connection. See Ex. J, US 3,314,718:



In any case, the overall appearance of the accused product is obviously different from that of the '703 patent.  Both the seat shell and the legs have entirely different constructions and appearances (particularly when keeping the prior art in mind):







Indeed, the most obvious differences that plainly distinguish the overall design of the '703 patent from the accused product are the substantial squareness of the accused product seat shell and the X shaped legs. These X shaped legs are merely the reuse of Eames' cross-base legs introduced around 1950, but which Defendant updated with a mild taper (Ex. H, A-):[4]



---

[4] Crossed shaped chair legs are nothing new. It is a basic design that has been widely used not only by Eames, but in other designs as well. See for example, US Patent No. 770,794 and US Patent No. 2,640,527. Ex. K; Ex. L.

### D.    The Accused Product and the '922 Patent Are Plainly Dissimilar

The seat shell of the '922 is identical to that of the '703 and therefore the analysis above applies equally to the '922 patent.  Just as with the '703, it is the legs that contribute most significantly to the overall appearance of the chair in setting it apart from the prior art.  And yet, the prior art legs exhibit even more similar features to the design of the '992 patent legs as the '992 patent and the prior art have the same curving connection between the leg and the crossbar:



And just as with the '703 patent, seat shell and the legs of the '922 patent are plainly dissimilar to the seat shell and legs of the accused product such that the overall appearance of the design of the '992 patent is plainly dissimilar to that of the accused product:



18

| '992 Patent | Accused Product |
|---|---|





### E.    The Accused Product and the '991 Patent Are Plainly Dissimilar

The seat shell of the '991 is identical to that of the '703 and therefore the analysis above applies equally to the '991 patent.  The leg design of the '991 patent is essentially an X.  But the law of design patent analysis dictates that the closer the prior art is to the design, the more small differences matter in the eyes of an ordinary observer. *Egyptian Goddess*, 543 F.3d at 677.  As discussed above, X shaped legs are well known (Ex. H, A-115, A-120; Ex. K; Ex. L):



As seen in the prior art the particular shape of the X may vary slightly. In the Eames design (left), the legs are uniform bars. In the '794 patent (center), the legs have a concavity in the center. In the '527 patent (right), the legs are flat and have a slight taper. So what differences are there that might contribute to the overall design of the '991 patent?

First, there is the fact that the front and back legs have differing angles. This causes the back legs to splay out further to the sides than the front legs which also creates an obvious gap between the sets of legs. Additionally, the legs are much wider than the seat shell so that they are clearly visible, extending beyond the seat when viewed from above (just as in the Eames design), while the X portion connected to the base of the seat shell is invisible when viewed from the side because of the downward extending curvature of the bottom of the seat:



The overall design of the '991 patent is plainly dissimilar from the design of the accused product (again keeping the prior art seat shell and basic design of X crossed legs in mind). Not only is the seat of the accused product obviously different in its use of squared corners and straight sides and back, but its basic crossed legs are different as they have a taper, uniform width, and are mounted to the bottom in a manner such that the crossing X portion is clearly visible from the side:





## VI.    Conclusion

To the extent that any of the asserted patents exhibit any protectible ornamentation, the scope of such protection is exceedingly narrow.  In view of the famous prior art designs of Charles and Ray Eames, small differences between the patented designs and the accused product

are glaring and obvious.  Just as in *Ethicon*, where minor differences in the curvature of the trigger and fluting of the knob rendered the patented design and accused design plainly dissimilar, so too, here, the numerous differences between the shape of the chair shell and the legs of the accused product as compared to the patented designs are so plainly dissimilar in their overall appearance that one design could not possibly be confused for the other.  The only appropriate course of action in this case is to dismiss Plaintiff's claims with prejudice just as the Federal Circuit confirmed was appropriate in, for example, *Colida v. Nokia, Inc.,* 347 Fed.Appx. at 570. (Dismissal of design patent infringement affirmed under Rule 12(b)(6) as the "infringement claims were facially implausible and provided the district court with no basis on which to reasonably infer that an ordinary observer would confuse the pleaded patented designs with the accused" product).

Dated: August 3, 2024

Respectfully submitted,

/s/ *Matthew De Preter*
Matthew De Preter
Sofia J. Quezada
ARONBERG GOLDGEHN DAVIS &
GARMISA
225 W. Washington, St. Suite 2800
Chicago, IL 60606
312-755-3153
cdepreter@agdglaw.com
squezada@agdglaw.com

*Attorneys for Defendant*
*JILI CREATION TECHNOLOGY CO., LTD.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 3, 2024 a true and correct copy of the

foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF

System, which will provide electronic notification of such filing to all attorneys of record.

/s/ *Matthew De Preter*
Matthew De Preter
*One of the Attorneys for Defendant*
*JILI CREATION TECHNOLOGY CO., LTD.*
4867-7875-6317, v. 2