### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOMY CASA LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:24-cv-00763 |
| v. | ) | |
| | ) | |
| JILI CREATION TECHNOLOGY CO., | ) | |
| LTD., | ) | |
| | ) | |
| Defendant. | | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Defendant has moved to dismiss Plaintiff's Complaint on the grounds that it fails to state a claim upon which relief may be granted. For the reasons discussed below, Defendant's Motion to Dismiss is GRANTED.

### I.    Background

Plaintiff and Defendant are both foreign corporations that sell chairs online. (ECF No. 1 ¶¶ 1-2). As is relevant here, Plaintiff has four design patents: "CHAIR" (U.S. Design Patent No. D808,669S), "CHAIR" (No. D920,703S), "CHAIR" (No. D936,991S), and "CHAIR" (No. D936,992S). (ECF No. 1 ¶¶ 11-14). Plaintiff claims that one of Defendant's products—the "Tapscott Solid Back Side Chair"—infringes on all four of these patents. (ECF No. 1 at 20-27). Plaintiff requested that Defendant cease and desist from the allegedly infringing conduct. (ECF No. 1 ¶ 24) After Defendant persisted, Plaintiff filed suit in this Court, alleging that Defendant's conduct violates 35 U.S.C. § 271. (ECF No. 1 ¶¶ 29-38). Plaintiff seeks treble damages, attorneys' fees, and injunctive relief. (ECF No. 1 at 9-10)

Defendant has now moved to dismiss Plaintiff's Complaint. (ECF No. 13). According to Defendant, its product is plainly dissimilar from the designs in Plaintiff's patents. (ECF No. 13 at 2). Defendant highlights the differences between its chair and Plaintiff's patents and argues that "in view of the prior art, no reasonable consumer could possibly find that Defendant's product infringes any asserted patent." (ECF No. 14 at 1). On those grounds, Defendant asks the Court to dismiss the action with prejudice to Plaintiff.

Plaintiff, for its part, contends that it has done enough to survive dismissal. Plaintiff notes that it has pleaded the existence of the patents; Defendant's selling activities; and provided direct comparisons of Defendant's product and the patented designs. (ECF No. 15 at 7-8).

Defendant's Motion to Dismiss is now pending before this Court and ripe for disposition. The Motion will be GRANTED.

## II.    Legal Standards

As an initial matter, the Court must determine what law applies. When adjudicating patent cases, district courts generally apply the law of the Federal Circuit to all issues that are "intimately involved with the substance of the patent laws." *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012). Procedural issues, however, including the grant or denial of a motion to dismiss, are governed by the law of the regional circuit. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1359 (Fed. Cir. 2017).

### A.    Motion to Dismiss

Rule 12(b)(6) permits a defendant to move to dismiss a complaint on the grounds that the complaint fails "to state a claim upon which relief can be granted." In reviewing such a motion, the Court must "accept all factual allegations [in the complaint] as true," *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), but need not credit unsupported conclusions or

inferences nor "threadbare recitals of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). After crediting the factual content of the complaint, the Court must then determine whether the complaint "raise[s] a right to relief above the speculative level" and states a "plausible," not merely a "conceivable" entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible if the court is able to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 248 (3d Cir. 2014) (quoting *Pension Benefit Guard. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *Anspach ex rel. Anspach v. City of Philadelphia*, 503 F.3d 256, 273 n.11 (3d Cir. 2007) ("Courts ruling on Rule 12(b)(6) motions may take judicial notice of public records."). Information contained in patents, even those not before the court, are matters of the public record and may therefore be considered by the Court without transforming a motion to dismiss into a motion for summary judgment. *See Koninklijke Philips N.V. v. IdeaVillage Prod. Corp.*, No. 21-08706, 2021 WL 4438185, at *4 (D.N.J. Sept. 27, 2021); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993).

If the Court grants a motion to dismiss, it must permit "curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Phillips*, 515 F.3d at 245).

### B.    Patent Infringement

Federal law permits the inventor of a "new, original and ornamental design for an article of manufacture" to obtain a patent for that design. 35 U.S.C. § 171(a). With such a patent, of

course, comes protection from dupes, knockoffs, and counterfeits. Federal law prohibits the manufacture, use, sale or import of a patented invention without permission of the patent holder. 35 U.S.C. § 271(a). Those who infringe upon the patent of another face civil liability, including treble damages. 35 U.S.C. § 284.

To determine whether a patent has been infringed, courts engage in a two-step analysis. First, the Court construes the patent, defining the scope of the patent's protection. *See Samiam Grp., LLC v. Coopersburg Assocs., Inc.*, 650 F. Supp. 3d 295, 312 (E.D. Pa. 2023). Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). For design patents, this step is straightforward. Courts ordinarily construe the patent as depicted in the patent drawings, as verbal descriptions of a design will often obscure at least as much as they elucidate. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed Cir. 2015) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008)).

Second, the Court compares the products at issue to determine whether the patent has been infringed. "A design patent is infringed '[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.'" *Ethicon*, 796 F.3d at 1335 (quoting *Egyptian Goddess*, 543 F.3d at 670).

In determining whether two designs are "substantially the same," *Gorham Mfg. Co. v. White*, 81 U.S. 511, 513 (1871), prior art provides the frame of reference. *Egyptian Goddess*, 543 F.3d at 676-77. "Where the frame of reference consists of numerous similar prior art designs, those designs can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Id.* at 677. "If the claimed design is close to the prior art designs, small

differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer. The ordinary observer, however, will likely attach importance to those differences depending on the overall effect of those differences on the design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (internal citations omitted); *Ethicon*, 796 F.3d at 1335 ("Differences, however, must be evaluated in the context of the claimed design as a whole.").

Whether an ordinary observer would consider two designs "substantially the same," and therefore whether a design patent has been infringed, is ordinarily a question of fact left to the jury. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010). But, in evaluating a 12(b)(6) motion, the Court is tasked with determining whether the complaint states a plausible claim for relief. *Twombly*, 550 U.S. at 570. If the Court concludes that the complaint does not support a reasonable inference that the defendant is liable for infringement, dismissal is proper. *See Fowler*, 578 F.3d at 210.

In design-patent infringement cases, this means that if the Court concludes—after considering information about the claimed designs and allegedly infringing product contained in the complaint and in the public record—that reasonable factfinder could not find that the two products are "substantially the same" in light of prior art, the Court must dismiss the complaint. *See Wepay Glob. Payments LLC v. PNC Bank N.A.*, No. 2:22-CV-00592, 2022 WL 1782504, at *2 (W.D. Pa. June 1, 2022) (quoting *Curver Luxembourg, SARL v. Home Expressions Inc.*, No. 17-4079, 2018 WL 340036, at *4 (D.N.J. Jan. 8, 2018), *aff'd*, 938 F.3d 1334 (Fed. Cir. 2019)); *see Koninklijke Philips*, 2021 WL 4438185, at *6 (compiling cases).

III.    Discussion

A.    Claim Construction

Following the Federal Circuit's direction, the Court will not, as it need not, provide an elaborate verbal description of the patented designs. Rather, the Court will construe the patents as they are depicted in the illustrations that accompany the patents.

B.    Claim Comparison

The Court must now compare the patented designs with the allegedly infringing product. Although Plaintiff brings only one count of patent infringement, Plaintiff alleges that Defendant has infringed on four separate patents: Patent No. D808,669S (the '699 patent), Patent No. D920,703S (the '703 Patent), Patent No. D936,991S (the '991 Patent), and Patent No. D936,992S (the '992 Patent). Because each patent protects a different design, the Court will evaluate each separately.

As discussed above, the operative question for the Court is whether Plaintiff has plausibly alleged that an ordinary observer, familiar with the prior art, would consider the chairs substantially the same such that the observer might purchase Defendant's chair when they meant to purchase Plaintiff's. *Ethicon*, 796 F.3d at 1335. To make this determination, the Court will rely primarily on comparisons of the drawings included in Plaintiff's patents and the photographs of Defendant's chair included in the Complaint. (*See* ECF No. 1 at 21-27). To provide the prior-art context for these comparisons, the Court takes judicial notice of a number of other patents. *See* Appendix I; *Beteiro, LLC v. BetMGM, LLC*, 626 F. Supp. 3d 789, 793 n.2 (D.N.J. 2022) (taking judicial notice of patents as "public documents generally known within this jurisdiction and not subject to reasonable dispute with respect to their or their source's accuracy"). Each of these patents was listed as a "cited reference" in the design patents that Plaintiff now seeks to enforce.

### 1.    The '669 Patent

The Court concludes that Plaintiff has not plausibly alleged infringement of the '669 patent. Having compared the drawings included in the '669 patent with photographs of the allegedly infringing chair that are in the Complaint, *see* Appendix II, the Court concludes that reasonable factfinder could not find that an ordinary observer, familiar with the prior art, would confuse the products for one another.

There are a number of differences between design protected by the '669 patent and Defendant's product. The '669 patent shows a chair with an interior section or cushion that is separate from the rest of the seat. Defendant's product has no such internal section. The '669 patent shows a chair with a flat seat. Defendant's product has a curved seat. The '669 patent shows a chair with back that is nearly vertical from the seat to halfway up, and then extends off at an angle. The back of Defendant's product is different: it extends at an angle from the seat in nearly a straight line.

While these differences might seem minor at first blush, they are significant in light of the prior art. Plaintiff and Defendant were entering into a crowded field of midcentury modern dining room side chairs. *See* Appendix I. Plaintiff, Defendant, and many others have designed and sold side chairs that are generally similar to the chair designed by Charles Eames. *See id.* The design in the '669 patent is distinguished from the prior art by its seat shape and interior offset. It is these same differences that distinguish the '669 patent from Defendant's product.[1]

---

[1] By noting this fact, the Court is not applying the now-rejected "point of novelty" test. Rather, the Court notes the '669 chair's points of departure from prior art because these are the features are likely to be particularly salient to an ordinary observer, and therefore, are likely to influence the ordinary observer's perception of the design as a whole. *See Egyptian Goddess*, 543 F.3d at 667.

In view of the prior art, the individual differences between the two designs combine to give the '669 design and Defendant's chair substantially dissimilar overall appearances. Because of the degree of dissimilarity, the Court concludes that a reasonable factfinder could not find that the designs are "substantially the same," such that an ordinary observer familiar with the prior art could purchase Defendant's chair supposing it to be Plaintiff's. *See Ethicon*, 796 F.3d at 1335.

Therefore, the Defendant's Motion to Dismiss is GRANTED as to the '669 patent.

### 2.    The '703 Patent

The Court concludes that Plaintiff has not plausibly alleged infringement of the '703 patent. Having compared the drawings included in the '703 patent with photographs of the allegedly infringing chair that are in the Complaint, *see* Appendix III, the Court concludes that a reasonable factfinder could not find that an ordinary observer, familiar with the prior art, would confuse the products for one another.

For starters, the shapes of the seats substantially different. The upper corners of the chair-back depicted in the '703 patent are gradual curves, whereas the upper corners of Defendant's chair are sharper and have a tighter radius. Looking at the '703 chair from the front, the back flares outwards where it connects with the seat, but the sides of Defendant's chair are straight. The combination of top corners and sides gives the '703 chair a bell-shaped silhouette, whereas the sharp corners and straight edges of Defendant's chair give it a trapezoidal silhouette. Further, viewed from the side, the back of the '703 chair has an S-shape, whereas the back of Defendant's chair is more or less straight. Moving from the seat back to the seat itself, the front corners of '703 chair have a large radius, whereas the corners of Defendant's seat are significantly sharper. This gives the seat of the '703 chair a round appearance, but the seat of Defendant's chair—like its back—is substantially trapezoidal.

The legs of the two chairs are also quite different. The legs of the '703 chair attach to the seat near the seat's edge and extend outwards so that they are visible when the chair is viewed from above. The legs of Defendant's chair, by contrast, attach closer to the center of the seat and are not visible when viewed from above. Moreover, the legs shown in the '703 patent are the same width from top to bottom. In contrast, the legs of Defendant's chair are tapered: they are thicker where they attach to the seat than where they reach the ground. And finally, the legs of the '703 chair are attached to horizontal crossbars that are visible when the chair is viewed from the front or the back. Defendant's chair has no such crossbars.

These individual differences combine to give the '703 chair and Defendant's chair substantially different overall appearances. The seat of Defendant's product is more angular than that of the '703 chair, and the legs of the chairs are plainly dissimilar. When considered in light of the prior art—where differences in leg appearance and seat shape distinguish chairs from one another—the Court concludes that a reasonable factfinder could not find that the designs are substantially the same such that an ordinary observer familiar with the prior art could purchase Defendant's chair supposing it to be Plaintiff's.

Therefore, the Defendant's Motion to Dismiss is GRANTED as to the '703 patent.

### 3.    The '991 Patent

The Court concludes that Plaintiff has not plausibly alleged infringement of the '991 patent. Having compared the drawings included in the '991 patent with photographs of the allegedly infringing chair that are in the Complaint, *see* Appendix IV, the Court concludes that a reasonable factfinder could not find that an ordinary observer, familiar with the prior art, would confuse the products for one another.

Here too, the overall shape of the chair distinguishes the patented design from Defendant's product. The '991 patent shows a chair with a bell-shaped back, with gradual curves at the top and fluting where the back meets the seat. In contrast, Defendant's product has a trapezoidal back, with tight corners at the top and sides that continue down to the seat in a straight line. Viewed from the side, the chair depicted in the '991 patent has a vertical S-shaped back, whereas the slope of the back of Defendant's chair is more or less constant. Like the '703 chair, the front corners of the '991 chair's seat have a large radius giving the seat a rounder shape, whereas the front corners of Defendant's product are significantly sharper, giving it a trapezoidal or square shape.

Though the legs of the '991 design and Defendant's chair appear similar, the differences in the shape of the seat meaningfully differentiate the two chairs, especially when viewed in light of the prior art. The Court concludes that the chairs are sufficiently different such that a reasonable factfinder could not find that an ordinary observer, familiar with the prior art, would mistake the chairs for one another.

Therefore, the Defendant's Motion to Dismiss is GRANTED as to the '991 patent.

### 4.    The '992 Patent

The Court concludes that Plaintiff has not plausibly alleged infringement of the '992 patent. Having compared the drawings included in the '992 patent with photographs of the allegedly infringing chair that are in the Complaint, *see* Appendix V, the Court concludes that a reasonable factfinder could not find that an ordinary observer, familiar with the prior art, would confuse the products for one another.

As with the '703 chair and the '991 chair, the seat shape of the '992 chair is substantially different from that of Defendant's product. The large radius of the upper corners and fluting of the lower corners give the back of the '992 chair a bell-like appearance, whereas the tight radius and

10

straight sides of Defendant's chair give it a trapezoidal silhouette when viewed from the front. Moreover, viewed from the side, the back of the '992 chair has an S-shape, whereas the back of Defendant's chair is more or less a straight line. Further, moving to the seat, the front corners of the '992 chair's seat have a large radius, whereas the same corners on Defendant's chair have a substantially tighter radius giving Defendant's a more trapezoidal appearance.

And finally, the legs of the chairs are different. The legs of the '992 chair connect near the edge of the seat and extend outwards, making them visible from above. In contrast, the legs of Defendant's chair connect to the seat closer to the center and are not visible from above.

As with the prior analyses, the Court considers these differences in light of their effect on the chairs' overall appearance. After conducting this comparison, keeping the prior art in mind, *see* Appendix I (Chavarria, No. D811,790), the Court concludes that a reasonable factfinder could not find that the designs are substantially the same, such that an ordinary observer familiar with the prior art could purchase Defendant's chair supposing it to be Plaintiff's.

Therefore, the Defendant's Motion to Dismiss is GRANTED as to the '992 patent.

### C.    Amendment

Because the Court has concluded that a reasonable factfinder could not find that the designs are "substantially the same" after comparing photographs of Defendant's product and the patented designs, the Court concludes that amendment would be futile. Accordingly, this dismissal is with prejudice. *Great W. Mining*, 615 F.3d at 174-75.

## IV.    Conclusion

For the reasons articulated above, Defendant's Motion to Dismiss (ECF No. 13) is GRANTED. Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

An appropriate Order will enter.

s/ Mark R. Hornak
Mark R. Hornak
Chief United States District Judge

Dated:  November 5, 2024

**Appendix I—Prior Art**



**1. Eames (No. 2,893,469)**



**2. Cohen (No. D182,790)**



**3. Straits (No. 3,261,640)**



**4. Grosfillex (No. 3,393,941)**



**5. Avedon (No. D192,029)**



**6. Glass (No. D544,230)**



**7. Olano Jauregui (No. D592,873)**



**8. Novak (No. D608,549)**



**9. Morrison (No. D666,015)**



**10. Meyer (No. D690,147)**    **11. Kotilainen (No. D729,538)**    **12. Morrison (No. D778,657)**

**13. Iqbal (No. D798,069)**    **14. Iqbal (No. D798,070)**    **15. Chavarria (No. D811,790)***

**16. Bendtzen (No. D816,359)***

*Prior to Patents Nos. D920,703S; D936,991S; D936,992S

## Appendix II—Comparison of '669 Patent and Defendant's Product

| '669 Patent | Defendant's Product |
|:---:|:---:|
|  Fig. 1 |  |
|  Fig. 2 |  |
|  |  |

| '669 Patent | Defendant's Product |
|---|---|
|  |  |
| 

Fig. 3 |  |
|  |  |

| '669 Patent | Defendant's Product |
|:---:|:---:|
|  | |

## Appendix III—Comparison of '703 Patent and Defendant's Product

| '703 Patent | Defendant's Product |
|---|---|
|  |  |
|  |  |
|  |  |

| '703 Patent | Defendant's Product |
|---|---|
|  |  |
|  |  |
|  |  |

## Appendix IV—Comparison of '991 Patent and Defendant's Product

| '991 Patent | Defendant's Product |
|---|---|
|  |  |
| \nFig. 2 |  |
|  |  |

| '991 Patent | Defendant's Product |
|---|---|
|  |  |
|  |  |
|  |  |

**Appendix V—Comparison of '992 Patent and Defendant's Product**

| '992 Patent | Defendant's Product |
|---|---|
|  |  |
|  |  |
|  |  |

| '992 Patent | Defendant's Product |
|---|---|
|  |  |
|  |  |
|  |  |